IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DR. ROBERT L. MEINDERS. D.C. LTD.,
Individually and as the representative of
a class of similarly-situated persons,

Plaintiff,

v.                                                    No. 14-0548-DRH

UNITEDHEALTHCARE, INC., et al.,

Defendants.

<u>MEMORANDUM and ORDER</u>

HERNDON, District Judge:

I.        <u>Introduction and Background</u>

This matter is on remand from the Seventh Circuit Court of Appeals.   On

September 24, 2015, the Seventh Circuit issued its Mandate reversing and

remanding this case for further proceedings (Doc. 43-1). The Seventh Circuit found

that the Court "premised its dismissal order on law and facts to which Meinders

did not have a full and fair opportunity to respond...." (Doc. 43).   Specifically, the

Seventh Circuit held:

As for the merits, both parties acknowledge that the contractual theory of assumption is one through which a nonsignatory to an arbitration agreement can enforce the agreement. The parties disagree, however, as to whether such assumption occurred here. All we have in the record on this point is Van Ham's vague declaration stating, "United has assumed important obligations under the Provider Agreement, such as [ACN Group's] obligation to coordinate and transmit payments to providers such as plaintiff in this lawsuit." Meinders raises a host of questions on appeal regarding Van Ham's declaration, many of which seek to determine whether United has assumed ACN Group's obligations under the Provider Agreement, and if so, to what extent. He seeks to submit testimony in response to Van Ham's bare-bones declaration, we think the more prudent course is to allow Meinders to contest Van Ham's declaration and delineate the metes and bounds of United's assumption. Accordingly, we remand to the district court where these factual issues may be more appropriately addressed in the first instance. On remand, the district court should permit discovery to the extent necessary to allow Meinders to submit a full response to Van Ham's declaration and United's assumption theory. Beyond that, we trust the district court to handle the proceedings as it sees fit.

(Doc. 43-2, p. 10).

After discovery closed on the issue, Meinders, a chiropractor, filed an amended putative class action complaint against Unitedhealthcare, Inc., United Healthcare of Illinois, Inc., United Healthcare Services, Inc., United Healthcare of Arizona, Inc., UHC of California d/b/a United Heathcare of California, United Healthcare of Colorado, Inc., United Healthcare of Oregon, Inc., United Healthcare of Utah, Inc., and United Healthcare of Washington, Inc. on April 25, 2016 (Doc. 62).[1] Almost identical to the original complaint, the amended complaint alleges that defendants sent a "junk fax" to Dr. Robert L. Meinders, D.C, in violation of the

---

[1] Plaintiff amended its complaint after discovery closed and added seven United entities that are incorporated outside of Illinois.

Telephone Consumer protection Act.   Plaintiff contends United sent an unsolicited fax to him advertising United Healthcare's services.   The fax sent, at some time in 2013, to Meinders provided information about new technology designed to assist United providers in recouping payment from patients.   Meinders' three count complaint alleges violations under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCP") (Count I), common law conversion (Count II), and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2 (Count III).   January 20, 2006, Meinders signed a Provider Agreement, with ACN Group in which he agreed, *inter alia*, to arbitrate in Minnesota any and all claims arising out of or relating to the Provider Agreement.[2]   Specifically, the Provider Agreement states in part:

> 21.   DISPUTE RESOLUTION BETWEEN PROVIDER AND ACN GROUP
>
> In the event of a dispute arising out of or relating to this Agreement … [i]f Provider and ACN Group are unable to resolve [such] dispute by mutual agreement, then matters in controversy may be submitted, upon the motion of either party, to arbitration under the Commercial Rules of the American Arbitration Association (AAA).   All such arbitration proceedings shall be administered by the AAA in Minnesota … Any arbitration proceeding shall occur in the County of Hennepin, State of Minnesota.

The parties have conducted discovery and filed cross briefs (Docs. 83, 88, 91 and 92).[3]   As the issue is ripe, the Court turns to address the issue of whether

---

2 In 2003, ACN became a wholly owned subsidiary of United Healthcare Services, Inc.   In August 2010, ACN changed its name to OptumHealth Care Solutions, Inc. ("Optum").   The Provider Agreement with ACN was amended, effective September 21, 2010, to reflect the change from CAN to Optum.   Optum is a wholly owned subsidiary of United Healthcare Services, Inc.

3 Defendants filed a renewed motion to dismiss, to compel arbitration, and to stay (Doc. 83); plaintiff filed his brief regarding defendants' right to compel arbitration (Doc. 88) and both sides

United, although not a signatory to the Provider Agreement, is entitled to enforce the agreement's arbitration clause on the ground that it assumed important obligations under the Provider Agreement.[4]

## II.  Analysis

Because the arbitration clause in this case calls for arbitration outside the Southern District of Illinois, Rule 12(b)(3) is the appropriate vehicle seeking dismissal of Meinders' suit.  *Faulkenberg v. CB Tax Franchise Systems, LP,* 637 F.3d 801, 808 (7th Cir. 2011) ("[W]e have held that a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district.").  When ruling on a motion to dismiss of improper venue under Rule 12(b)(3), the Court may look to evidence outside the pleadings. *Id.* at 809-10.

The FAA embodies a federal policy favoring enforcement of arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The relevant language of the FAA provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally

---

filed responses to the respective pleadings (Docs. 91 & 92).
4 The parties agree that Illinois law governs whether the parties have entered into a contract.

applicable contract defenses, such as fraud, duress, or unconscionability." *AT & T Mobility LLC v. Concepcion,* ⸺ U.S. ⸺, 131 S.Ct. 1740, 1746, 179 L.Ed.2d 742 (2011) (quoting 9 U.S.C. § 2) (internal quotation marks omitted). A court must determine whether the parties are bound by a given arbitration agreement and whether the agreement to arbitrate applies to a particular type of controversy. *See Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). In determining whether parties have agreed to arbitrate, courts apply state contract law. *James v. McDonald's Corp.,* 417 F.3d 672, 677 (7th Cir. 2005). If a valid agreement to arbitrate exists, the burden is on the party opposing arbitration to show that the claims at issue are not covered the agreement. *See Shearson/Am. Exp., Inc. v. McMahon,* 482 U.S. 220, 226–27 (1987).   Any doubts concerning the scope of arbitrable issues must be resolved in favor of arbitration, *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927; *Gore v. Alltel Commc'ns, LLC,* 666 F.3d 1027, 1032 (7th Cir. 2012), and a request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

The general rule is that an arbitration agreement binds only the parties to that agreement.  *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). "There are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others: (1) assumption; (2) agency; (3)

estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing *Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.,* 293 F.3d 1023, 1029 (7th Cir. 2002); *accord Am. Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 352 (2d Cir. 1999)).

Defendants argue that a non-signatory may enforce an arbitration clause of it assumes the obligations of a signatory. Specifically, defendants argue that it is clear from the record that United assumed payment and other obligations that the Provider Agreement allocated to ACN, and that plaintiff assented to (and benefited from) United's assumption.[5] Plaintiff counters that defendants cannot enforce the arbitration clause on its claims as defendants are neither parties nor signatories to the agreement. Plaintiff argues that defendants did not assume obligations such that they are entitled to invoke the arbitration clause contained in the agreement. Further, plaintiff argues that he did not assume the obligation to arbitrate this dispute with any of the defendants. Plaintiff contends that defendants cannot prove any "subsequent conduct" by anyone that showed that plaintiff or defendants "assume[d] the obligation to arbitrate" with each other because plaintiff had agreed to arbitrate disputes with ACN Group in the Provider Agreement. Plaintiff further contends that the Agreement expressly defines "Payors" separately from "Parties," and recognizes that "Payors" are not parties to the Agreement even though they will

---

5 In the motion, UnitedHealthcare of Illinois, Inc., and United HealthCare Services, Inc., move to dismiss and to compel arbitration while the remaining defendants request a stay of the litigation pending arbitration.

be performing obligations of ACN.    The Court agrees with defendants.

Based on the fully re-briefed pleadings, including the discovery conducted on this issue, it is clear to the Court that United has assumed the material obligations of ACN Group, a wholly owned subsidiary of United, under the Provider Agreement, which authorizes United to enforce the arbitration clause. Under Section 2 of the Provider Agreement, ACN Group is obligated to coordinate payment to Meinders. Colleen Van Ham, President and CEO of United attested that United assumed important obligations under the Provider Agreement such as Optum's obligation to coordinate and transmit payments to providers such as Meinders.    Furthermore, United's corporate representative, Thomas Doyle Wicklund, testified:

> "But the ACN, through its provider agreement with Dr. Meinders, is responsible for certain services.  And those services from the very first day of that provider agreement were – if assumed or taken on by UnitedHealthcare. And those are paying claims and verifying eligibility – adjudicating claims, don't necessarily pay them all the time. Adjudicating claims, submitting checks, submitting EOBs to both the members and to the providers, administering services that from the very first day UnitedHealthcare has provided."

(Doc. 92-1, ps. 4-5; Wicklund Depo.).    Wicklund further expounded:

> "Anything associated with the adjudication of and payment of a claim or the denial of a claim, anything associated with the verification of the member's eligibility, anything associated with providing the member their benefit information that affects the provider's policies – the provider payment policies/procedures, coding changes.    Anything that would affect the authorization process and policies."

(Doc. 92-1, p. 6).

Here, United performed the core duties of the Provider Agreement as it performed the contractual duties of ACN, thus, the arbitration clause applies with

full effect.   United engaged in extensive subsequent conduct by carrying out ACN's obligations under the Provider Agreement by processing plaintiff's claims, paying plaintiff directly on those claims, conducting pre-authorization and other administrative duties. The record is also clear that plaintiff was aware that United was performing these tasks and assented to United's performance by repeatedly submitting claims to, and accepting payments from United.[6]   Moreover, as a non-party, United had no duties under the Provider Agreement until it assumed the contractual duties of ACN.   The Provider Agreement states that ACN was responsible for matters such as "claim processing" and "coordinating and transmitting billing and payments," among other administrative responsibilities, including pre-authorization of services.   The record shows that United did all those tasks and assumed ACN's obligations.   Thus, United HealthCare Services, Inc., and UnitedHealthcare of Illinois, Inc., are entitled to enforce the arbitration clause of the Provider Agreement.   The Court grants the motion to dismiss for improper venue as to these two defendants.

As to the request for the stay pending arbitration by the remaining defendants, the Court grants the motion.   The court has discretion to stay proceedings in the interests of judicial economy and controlling its docket. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 21 n.

---

6 Defendants' internal records reveal that Meinders submitted thousands of claims to United between 2012 and 2014; that United processed these claims and that United provided Meinders with explanation of benefits for each claim processed (Doc. 83-11).   Defendants' internal records also show that United (not ACN) coordinated and transmitted payments to Meinders beginning in 2006.   *Id.*   In fact, Meinders produced bank records showing payments from United entities for service rendered to United members (Doc. 83-3).

23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court ... as a matter of its discretion to control its docket."); *IDS Life Ins. Co. v. SunAmerica, Inc.,* 103 F.3d 524, 529 (7th Cir. 1996) (acknowledging that district courts have discretion to stay proceedings with respect to all parties pending arbitration even where not all parties are subject to the arbitration agreement). While the arbitrator's findings pertaining to plaintiff's claims against UnitedHealthcare of Illinois, Inc., and United HealthCare Services, Inc., are not binding on plaintiff's claims against the remaining defendants, considerations of judicial economy and avoidance of confusion and possible inconsistent results nonetheless militate against plaintiff prosecuting his claims against these defendants while arbitrating his claims against UnitedHeatlhcare of Illinois, Inc., and United HealthCare Services, Inc., simultaneously. Here, the legal claims against defendants are identical. Should this Court outpace the arbitration proceeding, this Court's rulings and findings could affect the arbitrator's decision on those same issues, including the issue of class certification.

### III.   <u>Conclusion</u>

Accordingly, the Court **GRANTS** defendants' renewed motion to dismiss, to compel arbitration and to stay (Doc. 83). Pursuant to Rule 12(b)(3), the Court

**DISMISSES** this case for improper venue as to UnitedHealthcare of Illinois, Inc.,

and United HealthCare Services, Inc., and **STAYS** the case as to the remaining

defendants pending arbitration.

**IT IS SO ORDERED.**

Signed this 15th day of July, 2016.

Digitally signed by
Judge David R. Herndon
Date: 2016.07.15
10:46:33 -05'00'

**United States District Court**